UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRANCE EDWARD BAR,

                Plaintiff,                Case No. 21-cv-11444

v.                                Paul D. Borman
                                United States District Judge

KALITTA CHARTERS II, LLC,

                Defendant.

_____/

**OPINION AND ORDER:**
**(1) GRANTING DEFENDANT KALITTA CHARTERS II, LLC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) (ECF NO. 19), AND (2) STRIKING PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S REPLY BRIEF ("SUR-REPLY BRIEF") (ECF NO. 22)**

This is an employment discrimination case arising out of Plaintiff Terrance Bar's employment with Defendant Kalitta Charters II, LLC. Plaintiff, proceeding pro se, asserts claims of sexual harassment and retaliation pursuant to Title VII of the Civil Rights Act of 1964 against Defendant. Now before the Court is Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 19). The motion has been fully briefed.[1] The Court has determined that oral argument is not necessary

---

[1] On September 29, 2021, Plaintiff filed, without leave of Court, a "sur-reply" brief (titled "Response in Opposition to Defendant Kalitta Charters II, LLC's Reply in Support of its Motion to Dismiss the Amended Complaint"). (ECF No. 22, Pl.'s Sur-reply.) "Parties do not have a right to file a surreply brief under the federal procedural rules or the local rules." *Nett v. Wells Fargo Home Mortg. Inc.*, No. 10-15058, 2011

for proper resolution of this motion and will resolve the matter on the parties' written submissions. E.D. Mich. L. R. 7.1(f)(2). For the reasons that follow, the Court GRANTS Defendant's motion to dismiss Plaintiff's First Amended Complaint.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A.   Relevant Facts[2]

Defendant Kalitta Charters II is an "on demand" airline charter company that transports cargo around the world.  https://www.kalittacharters.com/about/. According to Plaintiff's First Amended Complaint, Plaintiff was employed by Defendant as a pilot during the relevant time period, until his termination on August 21, 2020. (ECF No. 17, Pl.'s First Amended Complaint (FAC), PageID.106, 110.)

---

WL 1519166, at *3 (E.D. Mich. Apr. 20, 2011) (citing *Jones v. Northcoast Behavioral Healthcare Sys.*, 84 F. App'x 597, 599 (6th Cir. 2003); *LaSalle Nat'l Bank Ass'n v. Wonderland Shopping Ctr. Venture Ltd. P'ship*, 223 F. Supp. 2d 806, 808 n.1 (E.D. Mich. 2002)); *see also Washington v. City of Detroit*, No. 05-CV-72433, 2007 WL 788902, at *2 (E.D. Mich. Mar. 14, 2007) (explaining that a sur-reply "is not contemplated by Local Rule 7.1 under normal circumstances."). Parties must first seek leave to file a sur-reply. *Nett*, 2011 WL 1519166, at *3. Plaintiff failed to seek leave to file his sur-reply and the brief adds nothing new to Plaintiff's argument. The Court will therefore strike the sur-reply brief and will not consider it for purposes of deciding Defendant's motion to dismiss.

[2] For the purposes of a motion to dismiss, the Court takes the factual allegations in Plaintiff's First Amended Complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Plaintiff alleges that some time in December of 2019, Greg DeBourge, a Check Airman employed by Defendant,[3] made "disturbing and intimidating comments on [a] social media platform." (FAC, PageID.107.) The FAC does not otherwise describe or elaborate on those "disturbing and intimidating comments."

On or around February 20, 2020, Mr. DeBourge "did a disturbing sexual suggestive simulation act in a meeting … at the hotel in Miami, Florida, and two female co-workers were present." (*Id.*) Again, the FAC does not further discuss or describe the allege act or specifically identify who was present at the meeting.

Then on February 21, 2020, during a training session, Mr. DeBourge showed Plaintiff and his "Simulator Partner Brandon Kearns … a homosexual pornographic video on his cell phone[.]" (*Id.*) Plaintiff states that after seeing the video he "was unable to continue and [he] had to leave the simulator training session[.]" (*Id.*) Plaintiff went outside the training facility and called the Director of Training, Darrell Coleman, to complain, but Mr. Coleman did not answer and Plaintiff "left him a voice message to please return my call." (*Id.*) Plaintiff next called "Chief Pilot" Mike Geadtke, and "explained to him what just happened." (*Id.*) When Mr. Geadtke, who

---

[3] A check airman is an aircraft pilot approved by the Federal Aviation Administration (FAA) to evaluate and certify the knowledge and skills of other pilots and "who is qualified to conduct flight checks in an aircraft, in a flight simulator, or in a flight training device for a particular aircraft." 14 C.F.R. § 135.337(a)(1).

3

had been across the street, arrived at the building shortly thereafter, he "could see how visibly upset [Plaintiff] was" and he gave Plaintiff his car keys so Plaintiff could go back to his hotel room, which he did. (*Id.*)

Plaintiff contends that Defendant then retaliated against him "for reporting this [February 21, 2020] incident involving Check Airman Greg DeBourge." (*Id.*) Specifically, Plaintiff states that, since the "harassment event," he has been required to report to the Cincinnati Northern Kentucky International Airport, approximately four hours from his house, instead of the Willow Run Airport, which is approximately 45 minutes from his house. (*Id.* at PageID.110.) He contends that he would then stay in the "crew room and sleep on a reclining chair" between flights, and that he found out the "the company was paying for hotel rooms for some of [its] Captains." (*Id.*) "On a couple of occasions," he would be scheduled to fly out of Cincinnati, and when he showed up "there was no aircraft or captain for [him]," and one time he was scheduled to fly out of Phoenix, Arizona for a week, but only flew two times and spent the rest of his time staying at the hotel. (*Id.*)

Plaintiff also contends that he was involved in an incident on June 5, 2020, in which the aircraft he was flying as the First Officer "experienced a[n] aircraft malfunction which caused the aircraft to veer off the runway" in Rochester, New York. (*Id.* ("I was the First Officer and it was my leg to fly.").) Plaintiff states that

4

he and the Captain were both "put through retraining events" as a result of the incident, and while the Captain "failed his Simulator Check ride and was demoted to First Officer and was assigned to fly with a regular line pilot," Plaintiff passed his "Check ride a few days later and was put through Recurrent Training with three different Check Airmen." (*Id.*) Plaintiff contends that on or about August 21, 2020, "[t]he last Check Airm[a]n Rob Numbers used pretext on a[n] Instructor comment form, from which [Plaintiff] was called into the Chief Pilots office and was terminated." (*Id.*)

Finally, Plaintiff contends that Defendant denied his unemployment benefits "due to Gross Misconduct," but that the State of Michigan Unemployment Office awarded [him] unemployment benefits due to lack of evidence after three months." (*Id.* at PageID.107.)

According to Plaintiff's FAC, he filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on November 12, 2020, and he received a Notice of Right to Sue letter on April 29, 2021. (*Id.* at PageID.108.)

## B.    Procedural History

On June 16, 2021, Plaintiff filed his original employment discrimination Complaint in this matter against Defendant, asserting claims for sexual harassment

and retaliation under Title VII. (ECF No. 1, Complaint.) Defendant filed a motion to dismiss this Complaint on July 30, 2021. (ECF No. 14.)

On August 16, 2021, Plaintiff filed his First Amended Complaint in lieu of a response to the motion to dismiss, again asserting claims against Defendant for sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964. (ECF No. 17, FAC.)

Defendant filed a Motion to Dismiss the FAC Pursuant to Fed. R. Civ. P. 12(b)(6) on August 30, 2021. (ECF No. 19, Def.'s Mot.) Defendant argues that Plaintiff fails to plead sufficient facts to establish a claim of sexual harassment, and he fails to state a claim of retaliation under Title VII.

On September 8, 2021, Plaintiff filed a Response in opposition to Defendant's motion. (ECF No. 20, Pl.'s Resp.) Plaintiff contends that his amended complaint sufficiently pleads his claims of harassment and retaliation, and that it satisfies Fed. R. Civ. P. 8's requirement to state "a short and plain statement of the claim showing that the pleader is entitled to relief."

On September 22, 2021, Defendant filed a reply brief in support of its motion to dismiss. (ECF No. 21, Def.'s Reply.) Defendant asserts that Plaintiff's response brief fails to address the deficiencies in his Amended Complaint, and reasserts that

Plaintiff failed to plead enough facts as to each element of his claims for sexual harassment or retaliation.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Id*. at 539 (internal citations and quotation marks omitted); *see also Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). In other words, a plaintiff must provide more than

a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The Sixth Circuit has explained that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). It is the defendant who "has the burden of showing that the plaintiff has failed to state a claim for relief." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015).

Pleadings and documents filed by pro se litigants are to be "liberally construed," and a "pro se complaint, however inartfully pleaded, must be held to a less stringent standard than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). However, "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield,* 92 F.3d 413, 416 (6th Cir. 1996) (citing *Jourdan v. Jabe,* 951 F.2d 108, 110 (6th Cir. 1991)). The basic pleading essentials are not abrogated in pro se cases. *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989). A pro se complaint must still "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Barnett v. Luttrell,* 414 F. App'x 784,

786 (6th Cir. 2011) (quoting *Iqbal,* 556 U.S. at 678) (internal quotations and emphasis omitted). District Courts "have no obligation to act as counsel or paralegal" to pro se litigants. *Pliler v. Ford,* 542 U.S. 225, 231 (2004). District Courts are also not "required to create" a pro se litigant's claim for him. *Payne v. Secretary of Treasury,* 73 F. App'x 836, 837 (6th Cir. 2003).

In ruling on a motion to dismiss, the Court may consider the complaint as well as: (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims; (2) matters of which a court may take judicial notice; (3) documents that are a matter of public record; and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015) ("Documents outside of the pleadings that may typically be incorporated without converting the motion to dismiss into a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (internal quotation marks and citations omitted); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings…. [C]ourts may also consider public records, matters of which a court may take judicial notice, and letter decisions of

governmental agencies."); *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings). Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002).

### III.  ANALYSIS

#### A.    Plaintiff's Title VII Sexual Harassment Claim

Title VII provides that "it shall be an unlawful employment practice for an employer ... to discriminate against any individual ... because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a). Title VII protects employees from discriminatory hostile or abusive work environments. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)). Plaintiff alleges a claim for sexual

harassment under Title VII. (FAC, PageID.107.) Sexual harassment that results in a "hostile work environment" is a type of discrimination "based on sex" that is protected under Title VII, even without a tangible employment action. *Meritor*, 477 U.S. at 64, 66. The protection against hostile work environments applies to both female and male employees. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998). "'The critical issue … is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" *Id.* at 80 (quoting *Harris*, 510 U.S. at 25 (Ginsburg, J., concurring)). The plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "*discrimina[tion]* … because of … sex." *Id.* at 81.

To prove a hostile work environment claim, a plaintiff must show that: (1) he was a member of the protected class; (2) he was subjected to unwelcome harassment, based on sex; (3) the harassment had the effect of unreasonably interfering with his work performance and created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer. *Warf v. U.S. Dep't of Veterans Affairs*, 713 F.3d 874, 878 (6th Cir. 2013) (citing *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008)). In terms of the third factor, the conduct must be "severe or pervasive enough to create an environment that a

reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Id.* (quoting *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000)). In determining whether a work environment is objectively hostile or abusive, courts consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris*, 510 U.S. at 23). "Harassing behavior need not be sexually explicit and we must consider "*[a]ny* unequal treatment of an employee *that would not occur but for the employee's gender.*'" *Warf*, 713 F.3d at 878 (emphasis in original) (quoting *Williams v. General Motors Corp.*, 187 F.3d 553, 565-66 (6th Cir. 1999)). Conduct that is "merely offensive" is insufficient to support a hostile work environment claim. *Harris*, 510 U.S. at 21. "Simple teasing, [ ] offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788 (internal quotation marks and citations omitted). "[C]omments and harassing acts of a continual nature are more likely to be deemed pervasive." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008).

Plaintiff's FAC lists the following three events as relevant to Plaintiff's sexual harassment claim:

- On or around December 2019, Check Airman DeBourge made "disturbing and intimidating comments on [a] social media platform;"

- On February 20, 2020, Mr. DeBourge "did a disturbing sexual suggestive  simulation act in a meeting … and two female co-workers were present;" and

- On February 21, 2020, Mr. DeBourge showed Plaintiff and his "Simulation Partner Brandon Kearns … a homosexual pornographic video on his cell phone" during a training session.

(FAC, PageID.107.) The facts alleged in the FAC regarding the first two incidents lack specificity. The FAC does not further discuss or elaborate on the alleged "disturbing and intimidating comments" on the "social media platform" in December of 2019, or the "disturbing sexual suggestive simulation act" on February 20th, or specifically identify who was present at that meeting. (*Id.*)

Accepting as true the allegations in Plaintiff's First Amended Complaint, the Court finds that Plaintiff fails to state a plausible claim for relief on his sexual harassment claim under Title VII. The Court recognizes that pro se Plaintiff's pleading requirements for a hostile work environment claim need not rise to the level of proofs required on a motion for summary judgment, and that at the pleading stage, a plaintiff who asserts a federal employment discrimination claim is not required to plead facts establishing a prima facie case under Title VII in order to state a claim

13

for relief. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002)). "The prima facie case ... is an evidentiary standard, not a pleading requirement." *Swierkiewicz*, 534 U.S. at 510. A plaintiff "need allege only (a) the statutory basis for [the] claims, and (b) the factual predicate of those claims, such that the defendants are 'apprise[d] ... of the [ ] claims and the grounds upon which they rest.'" *Dickinson v. Zanesville Metro. Hous. Auth.*, 975 F. Supp. 2d 863, 871 (S.D. Ohio 2013) (quoting *Lindsay v. Yates*, 498 F.3d 434, 440 (6th Cir. 2007)). However, Plaintiff is still obligated to "produce 'sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference' that h[is] work environment was both *objectively* and *subjectively* hostile due to sexually … charged harassment." *McAfee v. Phifer*, No. 2:19-CV-12956-TGB, 2020 WL 5596098, at *9 (E.D. Mich. Sept. 18, 2020) (quoting *Keys v. Humana, Inc.*, No. 3:09-CV-00834, 2013 WL 5740109, at *5 (W.D. Ky. Oct. 22, 2013)).

Plaintiff has not provided sufficient factual content for the Court to reasonably infer that Defendant's conduct was severe or pervasive enough to create a sexually hostile or abusive work environment. Plaintiff vaguely alleges three, isolated instances of "disturbing and intimidating comments on [a] social media platform," seeing a "disturbing sexual suggestive simulation act" one day in the presence of

14

two female coworkers, and being shown a "homosexual pornographic video" the following day. (FAC, PageID.107.) Plaintiff alleges that he subjectively considered these actions offensive and objectionable. While he does not allege that he complained of the first two events, he does contend that he voiced his objection to the video, and that he was told he could leave work and go back to his hotel room because he was "visibly upset." (*Id.*) Plaintiff does not allege any other instances of sexual harassment after this February 21st event and preceding his discharge six months later.

Reviewing the allegations in the FAC in their totality, these three isolated instances of conduct fall far short of the objectively severe or pervasive conduct needed to state a claim for relief for a sexually hostile work environment as a matter of law, and Plaintiff has failed to allege facts giving rise to a reasonable inference that the workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive so as to alter the conditions of [his] employment and create an abusive working environment." *Harris*, 510 U.S. at 21. The conduct complained of was not physically threatening or humiliating, but more analogous to a mere offensive utterance. The pleadings suggest that Plaintiff's coworker, Mr. DeBourge, engaged in obnoxious, offensive and inappropriate behavior three times (and only two of those instances occurred in the workplace),

but as the Supreme Court has observed, Title VII is not a "general civility code." *Oncale*, 523 U.S. at 80; *see also Stewart v. Esper*, 815 F. App'x 8, 21 (6th Cir. 2020) ("Title VII does not create a 'general civility code' and sporadic abusive language or offensive comments are not sufficient to support a claim.") (citation omitted); *Wasek v. Arrow Energy Servs.*, 682 F.3d 463, 467 (6th Cir. 2012) ("[T]he conduct of jerks, bullies, and persecutors is simply not actionable under Title VII unless they are acting because of the victim's [protected status]."). Further, the Supreme Court has observed that a co-worker's comments are not "automatically discrimination because of sex merely because the words used have sexual content or connotations." *Oncale*, 523 U.S. at 80

While the Court has no doubt that Plaintiff personally found the comments, actions, and video objectionable, the facts alleged in the FAC, accepted as true, do not describe circumstances creating an objectively hostile or offensive work environment. Rather, the Court finds, "informed by its 'judicial experience and common sense," *Keys*, 684 F.3d at 610, that these three alleged incidents over a two month period fail to give rise to the level of severe or pervasive atmosphere of harassment from the objective perspective of a reasonable person. *Harris*, 510 U.S. at 21; *see also Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 351 (6th Cir. 2005) (finding that three relatively isolated incidents over a period of approximately two

and a half years, including vulgar jokes, supervisor placing his vibrating pager on manager's thigh, and supervisor pulling at her overalls after she told him she was wearing a thong, were not pervasive enough to alter the conditions of employment and create an abusive situation); *Valentine-Johnson v. Roche*, 386 F.3d 800, 814 (6th Cir. 2004) (conduct involving one incident of unwanted touching and one comment with sexual overtones was insufficient to establish liability); *Burnett v. Tyco Corp.*, 203 F.3d 980, 984 (6th Cir. 2000) (finding that three alleged incidents of sexual harassment over six months did not create a genuine issue of material fact as to whether the conduct constituted hostile work environment sexual harassment); *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000) (one unwanted sexual advance, the telling of dirty jokes in plaintiff's presence, a one-time reference to plaintiff as "Hot Lips," and isolated comments about plaintiff's state of dress were insufficient to establish liability).

The Sixth Circuit's decision in *Williams v. CSX Transp. Co., Inc.*, 533 F. App'x 637 (6th Cir. 2013) is instructive, even though it was decided in the summary judgment context. In *Williams,* the plaintiff, a female employee, complained of visible pornography in the workplace and sexist remarks made by a co-worker on one occasion. The Sixth Circuit determined that these allegations of sex-based

17

harassment were insufficient to create an objectively sexually hostile work environment. The Court reasoned:

> Although it is true that "pornography displayed in the workplace, even if not directed to one individual specifically, may contribute to a hostile work environment for women generally," *Avery v. IdleAire Tech. Corp.,* No. 3:04-cv-312, 2007 WL 1574269, at \*17 (E.D. Tenn. May 29, 2007), all of the cases Williams cites in which courts have found a genuine question of material fact as to sexually hostile environment feature not only sometimes-visible pornography in the workplace, but additional conduct more severe or pervasive than in the present case. *See id.* at \*4-6 (in addition to pornography pop-ups on computer that plaintiff occasionally had to use, male employees were encouraged to make inappropriate comments about women, management referred to the plaintiff as a "bitch," plaintiff was told she could earn more money by being a prostitute than at her job, plaintiff was called a slut, plaintiff's hair and nails were mocked); *Andrews v. City of Phila.,* 895 F.2d 1469, 1472-75 (3d Cir. 1990) (in addition to pornography left in view, "women regularly were referred to in an offensive and obscene manner, [both plaintiffs] personally were addressed by the obscenities," one plaintiff was subjected to heavy breathing "down her neck" and pornography left in her personal desk drawer, while the other received repeated propositions); *Robinson v. Jacksonville Shipyards, Inc.,* 760 F. Supp. 1486, 1498 (M.D. Fla. 1991) (in addition to pornography being visible, plaintiff frequently witnessed obscene conversation about the pornography and plaintiff personally was subjected to sexual remarks from several co-workers, as well as "particularly severe verbal harassment" from another co-worker "regularly" and over "a number of different nights"); *Ayres v. Brewer Co.,* No. 1:04-cv-512, 2006 WL 2092559, at \*1 (S.D. Ohio July 26, 2006) (pornography in work trucks was but one of many allegations, others included sex-based insults directed at women in general by multiple employees, plaintiff called "cupcake" and "sweetheart," asked if she "spit[s] or swallow[s]," told that co-worker could keep her happy sexually); *Bell v. Best Brands,*

18

*Inc.,* No. 3:04-cv-0816, 2005 WL 2177007, at *10 (M.D. Tenn. Sept. 8, 2005) ("workplace ... was replete with instances of pornographic videos being shown; explicit discussions of sexual activities; and the utilization of vulgar, sexually charged language containing sexual innuendos, among other things," and some of the sexual comments were directed specifically to plaintiff). Williams has not cited any case in which the mere presence of visible pornography in the workplace combined with a single confrontation involving sexist remarks constituted a sexually hostile work environment.

*Williams*, 533 F. App'x at 641-42.

In addition, Plaintiff has not alleged that the comments on the social media platform in December 2019, the sexually offensive gesture on February 20, 2020, or the pornographic video on February 21, 2020 were directed towards him or *based on his gender*. Plaintiff complains that he observed the "disturbing sexual suggestive act" in a meeting where "female co-workers were present" and that he was shown the "homosexual pornographic video" with his presumably male simulation partner, Brandon Kearns. He has not provided any context for the alleged "disturbing and intimidating comments" on the social media platform. Plaintiff has not alleged that he was singled out and has not alleged any facts that the three incidents were directed towards him or based on his gender, and has alleged only that he was present for the second two incidents. This also weighs against a finding of an objectively hostile work environment because conduct directed at others in the workplace is considered less hostile because it is not linked to Plaintiff's gender. *Williams,* 533 F. App'x at

19

641. "The critical issue ... is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Harris*, 510 U.S. at 25 (Ginsburg, J. concurring). *See also McGowen v. Kroger Dist. I*, No. 16-13216, 2018 WL 6174042, at *7 (E.D. Mich. Sept. 7, 2018) ("Much of the vulgar behavior complained of – such as crude drawings of male genitalia in the break room and on the Christmas decoration – was there for all employees to see."); *Wieland v. Dept. of Transp.–State of Indiana*, 98 F. Supp. 2d 1010, 1019 (N.D. Ind. 2000) ("Because Title VII is premised on eliminating discrimination, inappropriate conduct that is inflicted on both sexes, or is inflicted regardless of sex, is outside the statute's ambit.").

Accordingly, for all the reasons discussed above, the Court finds that Plaintiff fails to state a claim for sexual harassment under Title VII and that claim is dismissed.

### B.     Plaintiff's Title VII Retaliation Claim

Title VII prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII]...." 42 U.S.C. § 2000e-3(a). A plaintiff "may prove unlawful retaliation by presenting direct evidence of such retaliation or by establishing a *prima facie* case under the *McDonnell Douglas* framework." *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542

(6th Cir. 2003); *see also Spengler v. Worthington Cylinders,* 615 F.3d 481, 491-92

(6th Cir. 2010) (applying the *McDonnell Douglas* framework to a retaliation claim).

"The burden of establishing a *prima facie* case in a retaliation action is not onerous,

but one easily met." *Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 523 (6th Cir.

2008) (internal quotation marks omitted). To establish a prima facie case of

retaliation, a plaintiff must show that: (1) he engaged in Title VII protected activity;

(2) the employer knew that he engaged in that protected activity; (3) the employer

subsequently took an adverse employment action against him; and (4) the adverse

action was causally connected to the protected activity. *Taylor v. Geithner*, 703 F.3d

328, 336 (6th Cir. 2013).

### 1.    Protected activity

Defendant first argues that Plaintiff fails to plead that he engaged in a

protected activity. (Def.'s Mot. at p. 15, PageID.130.) A Title VII "protected

activity" is opposition to "any practice made an unlawful employment practice by

this subchapter, or because [plaintiff] has made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or hearing under this

subchapter." *See* 42 U.S.C. § 2000e-3(a); *see also E.E.O.C. v. New Breed Logistics*,

783 F.3d 1057, 1067 (6th Cir. 2015) (noting that this provision covers "not only the

filing of formal discrimination charges with the EEOC, but also complaints to management and less formal protests of discriminatory employment practices.").

In Plaintiff's FAC, he pleads only that he complained about the February 21st incident involving the "homosexual pornographic video" shown by Check Airman DeBourge to Plaintiff and his simulation partner, Brandon Kearns. (FAC, PageID.107.) Plaintiff similarly asserts in his Response brief only that he complained about "what happened in the simulator." (Pl.'s Resp., PageID.138.) Plaintiff pleads that he called the "Director of Training Darrell Coleman," but did not reach him and that he "left him a voice message to please return my call." (FAC, PageID.107.) Plaintiff then pleads that he explained "what happened" to Chief Pilot Mike Geadtke, who told Plaintiff to go back to his hotel room. (*Id.*) Plaintiff alleges that Defendant retaliated against him for reporting this single incident. (*Id.*)

Defendant asserts that Plaintiff fails to plead what he allegedly explained to the Chief Pilot on February 21, 2020, or that the Chief Pilot understood the conversation to be a sexual harassment complaint. (Def.'s Mot. at p. 15, PageID.130.) However, construing the allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has adequately alleged that he complained to Mr. Geadtke about Mr. DeBourge's conduct in the simulator on February 21st. (See FAC, PageID.107 ("I then called Mike Geadtke and explained to him what just

22

happened…. I reported to him what happened in the simulator.").) Opposing conduct includes "[c]omplaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices ... and opposing unlawful acts by persons other than the employer – e.g., former employers, union, and co-workers." *Johnson v. University of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000).

An employee who complains about a hostile work environment need not actually prove that the employer's alleged misconduct was, in fact, unlawful under Title VII to prevail on a retaliation claim. *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 646 (6th Cir. 2015) ("[A]n employee who opposes a hostile work environment need not prove that the environment he complained of was actually hostile in order for the employee to receive protection from retaliation under Title VII."). Nonetheless, the plaintiff must have a reasonable, good faith belief that the defendant has committed an unlawful employment practice to state a claim for retaliation. *Id. See also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001) (considering whether plaintiff could have reasonably believed that alleged harassment violated Title VII in determining whether plaintiff's retaliation claim was actionable). The reasonable, good faith belief requirement has subjective and objective components. The subjective component requires that the "employee complaining of a hostile work environment must 'actually believe[ ] that the conduct

complained of constituted a violation of relevant law.'" *Yazdian*, 793 F.3d at 646 (quoting *Rhinehimer v. U.S. Bancorp Invs., Inc.,* 787 F.3d 797, 811 (6th Cir. 2015)). The objective component requires that "'a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee' would believe that the conduct complained of was unlawful." *Id.* Objective reasonableness is decided as a matter of law "only when no reasonable person could have believed that the facts known to the plaintiff amounted to a violation or otherwise justified the employee's belief that illegal conduct was occurring." *Id.*

While complaints of a sexually hostile work environment would generally be protected conduct, *see* 42 U.S.C. § 2000e-2(a)(1), § 2000e-3(a), the Court concludes that no reasonable person would believe that the single incident Plaintiff allegedly complained of (or even the three isolated incidents alleged in the complaint) constituted unlawful sex harassment based on a sexually hostile work environment under the circumstances set forth in Plaintiff's FAC. *See Breeden*, 532 U.S. at 271 (concluding that no reasonable person could have believed that a single incident violated Title VII's standard). It is not objectively reasonable for employees to believe that every complaint they make in the workplace is protected activity under Title VII. *Reckley v. City of Springfield, Ohio*, No. 3:05-cv-249, 2009 WL 10709751, at *13 (S.D. Ohio Mar. 31, 2009) (stating that "the facts indicate that the Plaintiff

found the work environment to be 'merely offensive'" but she stated "no facts to indicate that the workplace was permeated with intimidation, ridicule, and insult, based on her gender."). "In the event that reported conduct is not serious enough that a reasonable person could believe it violated Title VII, a claim for retaliation will not lie." *EEOC v. Rocket Enters.*, No. 06-14319, 2008 WL 724613, *4 (E.D. Mich. Mar. 18, 2008) (citing *Breeden*, 532 U.S. at 271).

For example, in *Breeden*, the United States Supreme Court held that the plaintiff's retaliation claim based on complaints of sexual harassment was foreclosed where no reasonable person could have believed that a co-worker's single, sexually explicit comment violated Title VII. *Breeden*, 532 U.S. at 271. *See also Roper v. City of Cincinnati Fire Dep't*, No. 1:18-cv-901, 2019 WL 4454421, at *5 (S.D. Ohio July 12, 2019) ("[N]o reasonable employee would believe that being exposed to a sexually explicit movie in an employee dining room where other employees were present on a single, isolated occasion for a brief period of time created a sexually hostile work environment under Title VII."), *report and recommendation adopted by* 2019 WL 4453854 (S.D. Ohio Sept. 17, 2019); *Satterwhite v. City of Houston*, 602 F. App'x 585, 588 (5th Cir. 2015) (finding no protected activity for retaliation claim because no reasonable person would believe that the single use of the phrase "Heil Hitler" in a meeting was actionable under Title VII, because isolated incidents

do not amount to actionable conduct under Title VII); *Theriault v. Dollar Gen.*, 336 F. App'x 172, 174 (3d Cir. 2009) (employee "did not engage in protected activity because she complained only of a single incident that no reasonable person could have believed violated Title VII").

Here, the Court finds that no reasonable employee would believe that being exposed to a pornographic video on a single, isolated occasion for a brief period of time created a sexually hostile work environment under Title VII. Plaintiff therefore has failed to plausibly allege the objective component of the protected activity requirement of his retaliation claim, and Defendant's motion to dismiss Plaintiff's retaliation claim can be granted on this basis. However, even if the Court found, at this stage of the proceedings, that Plaintiff has sufficiently alleged he engaged in protected activity when he complained to Mr. Geadtke about the video, the Court finds that his retaliation claim still fails for the reasons that follow.

### 2.     Alleged adverse actions

Plaintiff alleges five instances that he considers to be retaliatory conduct: (1) requiring him to drive to a departure airport in Cincinnati; (2) having him occasionally stay in the crew room while he awaited his next flight; (3) arriving for a flight to discover that the aircraft was not available; (4) being terminated after recurrent training sessions following a runway incident; and (5) being denied

unemployment benefits on the basis of gross misconduct. (FAC, PageID.107, 110.) Defendant argues that driving to a different airport, sleeping in a crew room, and lack of available aircraft (1-3 above) are not adverse employment actions with regard to an aircraft charter operation. (Def.'s Mot. at p. 16, PageID.131.) The Court agrees.

An adverse employment action is a "materially adverse change in the terms or conditions of ... employment because of [the] employer's conduct." *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004) (alterations in original) (quoting *Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)). An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Other material adverse actions such as "a less distinguished title, diminished options for advancement, or other unique indices" can constitute adverse employment actions. *Freeman v. Potter*, 200 F. App'x 439, 442 (6th Cir. 2006) (citations omitted). But not every act affecting an individual's employment constitutes a materially adverse change. *McMillian v. Potter*, 130 F. App'x 793, 796 (6th Cir. 2005). "Reassignments without changes in salary, benefits, title, or work hours usually do not constitute adverse employment actions." *Policastro v. Nw. Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002) (citations

27

omitted). And de minimis employment actions are not materially adverse. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000). Whether something constitutes an adverse employment action is viewed objectively, and the question is whether the employment action was "objectively intolerable to a reasonable person." *Policastro*, 297 F.3d at 539.

The Court finds that being required to drive to a different airport, to sleep in a crew room, and the lack of available aircraft are not materially adverse actions. Plaintiff has not alleged that he was the only employee subjected to these circumstances or that these requirements were anything other than routine company practices. Further, being required to undergo retraining in June 2020 following the off-runway incident, along with the other pilot on the flight, cannot be considered an adverse employment action.

With regard to Plaintiff's allegation that Defendant retaliated against him by denying his claim for unemployment benefits due to gross misconduct, federal district courts within the Sixth Circuit have concluded that an employer's "mere opposition" to an unemployment benefits claim does not constitute retaliation under Title VII or analogous state law. *See Ellis v. Prospect Airport Servs.*, No. 17-13852, 2019 WL 2218819, at *5 (E.D. Mich. Jan. 25, 2019), *report and recommendation adopted by* 2019 WL 1417163 (E.D. Mich. Mar. 29, 2019); *Morningstar v.*

28

*Circleville Fire & EMS Dep't*, No. 2:15-cv-3077, 2018 WL 3721077, at *8 (S.D. Ohio Aug. 6, 2018) (citing *Powell v. Honda of Am.*, No. 06-CV-979, 2008 WL 2872273, at *2 (S.D. Ohio July 22, 2008) ("[A] former employer's opposition to a request for unemployment benefits is not, as a matter of law, actionable retaliatory misconduct."); *Kowalski v. Kowalski Heat Treating, Co.*, 920 F. Supp. 799, 805 (N.D. Ohio 1996) (explaining that opposition to unemployment benefits is not the type of conduct that Ohio lawmakers sought to prevent with anti-retaliation statutes because the state's own administrative process allows employers to oppose unemployment benefits); *Spencer v. CSL Plasma, Inc.*, No. 3:10-CV-00262, 2011 WL 4054715, at *7 (E.D. Ky. Mar. 8, 2017) ("[L]egitimate opposition to an unemployment compensation claim cannot be the basis for a retaliation claim."); *Hatton v. United Parcel Serv.*, No. 05-97-JBC, 2006 WL 1895724, at *3 (E.D. Ky. July 7, 2006) ("An employer may challenge a former employee's application for unemployment benefits without running afoul of anti-retaliation laws".)). Thus, to the extent that Plaintiff's retaliation claim is based on Defendant's opposition to his claim for unemployment benefits, the Court finds that he fails to state a claim.

Plaintiff's termination in August 2020, however, does constitute an adverse employment action.

29

### 3.     Causal connection

While Plaintiff's August 2020 termination constitutes an adverse employment action, Plaintiff has failed to plausibly allege that his termination was causally related to his single complaint to Mr. Geadtke about the video in February 2020, six months prior to his termination, rather than his admitted action of veering off the runway in June 2020 and then being put through recurrent training in the months preceding his termination. *See Abbott*, 348 F.3d at 543 (requiring the plaintiff to produce evidence "from which one could draw an inference that the employer would not have taken the adverse action against the plaintiff had the plaintiff not engaged in activity that Title VII protects"). Plaintiff pleads that, following the June 5, 2020 incident in which the plane he was piloting "veer[ed] off the runway" on takeoff, he was put through "Recurrent Training," and that the "last Check Airm[a]n Rob Numbers" made a comment on an "Instructor comment form" which caused him to be "called into the Chief Pilots office and … terminated." (FAC, PageID.110.) Accordingly, Plaintiff expressly pleads that he was terminated because of this comment by Check Airman Rob Numbers, and not because of his complaint to Mr. Geadtke, six months earlier, about a video shown by Check Airman DeBourge.

Plaintiff offers nothing more in support of his retaliation claim other than his termination six months after he complained of the February 21, 2020 incident,

although Plaintiff contends that he only worked 48 duty days during that six month time period. (FAC, PageID.107, 110.) Where an adverse employment action occurs "very close in time" after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. *Yazdian*, 793 F.3d at 650. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality. *Id. See also Breeden*, 532 U.S. at 273 ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality … uniformly hold that the temporal proximity must be 'very close.'") (citation omitted). And, even though close temporal proximity can support the causal element of a prima facie case of retaliation, an "intervening legitimate reason to discipline" an employee can nevertheless defeat that inference." *Fletcher v. U.S. Renal Care*, 709 F. App'x 347, 353 (6th Cir. 2017) (citing *Wasek*, 682 F.3d at 472).

Such close temporal proximity is lacking here and, in the absence of any other allegations to establish  causation, Plaintiff has failed to state a retaliation claim. Plaintiff's FAC includes no factual allegations to support a conclusory allegation

31

that he was terminated because of his single complaint six months prior regarding the video rather than because of the comment by Check Airman Rob Numbers on the Instructor comment form during Plaintiff's retraining following the June 2020 runway incident. *See Navarro-Teran v. Embraer Aircraft Maint. Servs.*, 184 F. Supp. 3d 612, 622 (M.D. Tenn. 2016) (stating that the court was unaware of any case in which causation was inferred "solely from allegations that the protected activity and retaliation took place a full *year* apart") (emphasis in original). As explained above, even if the Court found that 48 duty days (over six months) supports an inference of close temporal proximity (which it does not), an "intervening legitimate reason to discipline" an employee can defeat that inference. *See Wright v. Cellular Sales Mgmt. Grp., LLC*, 793 F. App'x 409, 410 (6th Cir. 2019) (finding an intervening legitimate reason when the plaintiff "got into a public shouting match with a co-worker[ ]" between her complaint and her termination, and "company policy prohibited" that conduct); *Fletcher*, 709 F. App'x at 353 (finding an intervening legitimate reason when plaintiff's supervisor "caught what she believed was another potentially dangerous charting error by Fletcher, and Fletcher does not appear to dispute that it was Nelson's report about that error that led Sasserson and other managers to independently review his performance, culminating in the final warning that company policy required"); *Bailey v. Oakwood Healthcare, Inc.*, 732 F. App'x

360, 368 (6th Cir. 2018) (finding causation absent when the termination was several months removed from the protected conduct and the stated reasons for the termination (the intervening legitimate reason) arose after the protected conduct.). Plaintiff pleads in his FAC that Check Airman Rob Numbers' comment on the Instructor comment form during the retraining following the runway incident was the reason he "was called into the Chief Pilots office and was terminated," and that intervening legitimate reason to terminate him extinguishes any inference that could be based on temporal proximity alone. *See Wasek*, 682 F.3d at 472 (finding that the intervening legitimate reason to discipline plaintiff – plaintiff's leaving the job site without permission after making a complaint of "sexual touching" to a supervisor – "dispels an inference of retaliation based on temporal proximity"). In addition, Plaintiff does not allege that Check Airman Rob Numbers was involved with, much less even aware of, Plaintiff's February 21st complaint about the video.

Thus, the Court finds that Plaintiff has failed to state a retaliation claim under Title VII, and that claim is dismissed.

## IV.   CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant Kalitta Charters II, LLC's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 19) and **DISMISSES** Plaintiff's First Amended Complaint.

IT IS SO ORDERED.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: October 25, 2021

34